UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**MARTHA A. WILLIAMS,**
               **Plaintiff**

v.                                                                       Civil Action No.
                                                                       3:05CV519-J

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
               **Defendant**

**<u>MEMORANDUM OPINION</u>**

      This case presents plaintiff Martha A. Williams' challenge to the decision of the Commissioner denying her claim to Disability Insurance Benefits. After examining the materials of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

      Ms. Williams filed her application in January 2003, claiming that she had been unable to engage in any substantial gainful employment since August of 1997. After a hearing, the Administrative Law Judge ("ALJ") determined that Ms. Williams' fibromyalgia, bilateral carpal tunnel syndrome, muscle spasms, headaches and numbness were severe impairments, but that she retained the residual functional capacity to perform her past relevant work as a cashier at a dairy mart, a cashier and lottery clerk at a liquor store, and a supervisor security screener at an airport.

      The disability determination process consists of five steps. <u>Wyatt v. Secretary</u>, 974 F.2d

1

680 (6th Cir. 1992).  These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

    1.  The claimant must not be engaged in substantial gainful activity.

    2.  The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking.  20 CFR Section 416.921.

    3.  If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

    4.  The claimant must be unable to do his or her past relevant work.

    5.  If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs.  Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

    As this decision was made at Step 4 of the sequential evaluation process, neither the burden of persuasion nor the burden of producing evidence ever shifted from the plaintiff.  If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991).  The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion.

Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994),  Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

Ms. Williams argues that the ALJ erred in failing to follow Social Security Ruling 99-2p in evaluating whether her fibromyalgia, carpal tunnel syndrome, and depression *in combination* met or equaled a listed impairment. As it is unclear whether Ms. Williams is arguing that the Commissioner failed to give her the benefit of SSR 99-2p, or whether she is arguing that the combined effects of her impairments were not considered, the Court will address both possible arguments.

SSR 99-2p is entitled "Evaluating Cases Involving Chronic Fatigue Syndrome"; it provides that although chronic fatigue syndrome ("CFS") is not the subject of a separate section of 20 C.F.R. Part 404, Subpart P, Appendix 1 (2000) (the "Listings"), CFS may nonetheless be found to be a medically determinable impairment that can be the basis of a finding of disability. This is a Step 3 matter.  At Step 3, the claimant bears the burden of proving that s/he meets or equals a Listing.  Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987).   That is, a specific listing must be identified, and then the plaintiff must present specific *medical* (rather than functional) information to satisfy all of the Listing criteria.  20 C.F.R. Sec. 416.925.

Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing.  Foster v. Halter, 279 F.3d 348 (6th Cir. 2001),  Hale v. Secretary, 816 F.2d 1078 (6th Cir. 1987).  There is no explicit Listing for fibromyalgia; therefore, Ms. Williams could succeed at Step 3 only by showing equivalence.  A plaintiff cannot show that s/he "equals" a Listing simply by showing overall *functional* impact of his condition; "equivalence" is a test used only when the claimant's impairment is unlisted, and it is satisfied only by presenting

3

medical evidence of findings "equal in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990). In this case, Ms. Williams failed to identify any "most similar impairment," and the Commissioner did not err in finding that she had not established disability at Step 3.

Not only is there no Listing for fibromyalgia, but there is also no fibromyalgia counterpart to SSR 99-2p. Ms. Williams notes SSR 99-2p's observation that the symptoms of CFS may be similar to those of other conditions, including, inter alia, fibromyalgia, but then she takes a further step away in suggesting that the terms of SSR 99-2p apply to fibromyalgia in precisely the way they apply to CFS. That step does not logically follow: SSR 99-2p simply provides that CFS may serve as the basis for a disability finding at Step 3 of the Sequential Evaluation Process, even though it is not the subject of a specific Listing.

Having failed to point to a Listing which her fibromyalgia met or equaled from a medical point of view, plaintiff failed to establish disability at Step 3 of the sequential evaluation process. Does this mean that the effects of her fibromyalgia and the impact of her impairments in combination would not be considered at all? Certainly not. At Step 4 of the sequential evaluation process, the ALJ was required to consider whether the functional impact of her impairments, either singly or in combination, prevented her from performing her past relevant work. Fibromyalgia has been recognized as a difficult subject in the disability analysis (just as it is difficult medically). See, e.g., Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996). In the current case, however, the ALJ *did* find that the evidence established fibromyalgia as a medically determinable impairment which was severe in its effects on the plaintiff, and he did consider its functional effects, both singly and in combination with other problems.

4

Plaintiff next argues that the ALJ failed to accord to the opinion of her treating physician the weight to which it was entitled. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court confirmed the weight ordinarily due the opinion of a treating physician. Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p. However, an opinion that is not objectively supported need not be accepted. "As we held in Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir.1993), a social security ALJ may properly discount a treating physician's opinion of disability: '[t]his court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.'" Combs v. Commissioner, __F.3d__, 2006 WL 2355590 (6th Cir., August 16, 2006).

The physician opinions on which plaintiff relies consisted of check marks on questionnaires submitted to Dr. Torregrosa and dated December 11, 2003. The items checked indicated that plaintiff needed to rest 20 minutes out of every 60, that she needed to "lie down and/or rest for substantial periods" during the day, that she had extreme impairment of ability to function, that her pain interfered with her ability to maintain attention between one-third and two-thirds of the time, that she has frequent headaches, and "the patient's overall level of pain, fatigue and discomfort is such that it would interfere with her ability to seek gainful employment." Tr. 241-245. On June 25, 2004, Dr. Torregrosa checked a questionnaire box indicating that the severity he described in December of 2003 was the same as it had been in September of 2001 (which plaintiff's fully insured status expired). Tr. 248.

These are extreme limitations, and one would expect to find them mentioned in treatment notes. In October of 1999, he noted that she reported "occasional" exacerbations. Tr. 138. In January of 2000, he referred to a "recent exacerbation due to having to drive back" to Michigan from Kentucky in the middle of a storm. Tr. 137. He noted in January of 2001 that her fibromyalgia was "moderately" active. Tr. 135. In none of these office notes is there mention of the limitations described in December of 2003. Dr. Torregrosa's notes generally describe the condition as "stable," include the recommendation that Ms. Williams "continue current activity level," and observe unusual events, such as a report of increase in pain upon "shoveling large amounts of snow."

In light of Combs, Bogle and Wilson, supra, the opinion of Dr. Torregrosa was not entitled to great weight, because it was not "supported by sufficient clinical findings and are consistent with the evidence." The ALJ complied with his legal obligations when he examined the treatment records, and noted that "no treating or examining physician noted any restriction of activities prior to September 2001." Tr. 17.

Next, Ms. Williams argues that the ALJ erred in evaluating her credibility. A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter. Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987). An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v.

6

Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997). Nonetheless, the ALJ's credibility assessment must be supported by substantial evidence. Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997). Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so. Auer v. Secretary, 830 F.2d 594, 595 (6th Cir. 1987).

In the present case, the ALJ provided reasons for failing to fully accept the plaintiff's testimony as to disabling pain. For example, he noted plaintiff's testimony that from 1997 on, she was unable to lift more than a gallon of milk. Yet Dr. Torregrosa's notes refer to her report of an exacerbation that followed shoveling "large amounts" of snow, and refer as well to her lament in January 2003 that her pain was so severe that she could not go bowling. The ALJ also noted her statement that she suffered from crying spells and depression from 1997 on, but then observed that Dr. Dienes' records for the time described her as doing fairly well, and recorded improvement when she was taking Elavil. As noted above, the ALJ observed that no physician had recorded any restriction of activities prior to September 2001. The Court finds that the ALJ complied with his legal duty in evaluating Ms. Williams' credibility.

Finally, Ms. Williams contends that it was error to resolve this matter at Step 4, and that the ALJ should have sought vocational expert testimony. In essence, she is arguing that the burden of coming forward with evidence shifted to the Commissioner. Accepting this argument would require this Court to find that substantial evidence failed to support the Commissioner's determination that she retained the ability to perform her past relevant work. The substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984).

     Whether another finder of fact would have determined on the evidence that Ms. Williams could not perform her previous work is simply irrelevant.  Our only inquiry is whether there is sufficient evidence to support the Commissioner's finding.  Considering the record as a whole, plaintiff's report of her activities, the lack of restriction noted in treating physician reports, and the opinions of State Agency physicians, the Court concludes that substantial evidence supports the determination of the Commissioner at Step 4.

     A judgment in conformity has this day entered.